Errol LEWIS, et al., Appellants,

v.

MINNEAPOLIS BOARD OF EDUCATION, SPECIAL SCHOOL DISTRICT # 1, Respondents.

No. C1–86–1901.

Court of Appeals of Minnesota.

July 7, 1987.

Review Denied Sept. 23, 1987.

Jeffrey W. Jacobs, Minneapolis, for appellants.

John J. O'Donnell, Minneapolis, for respondents.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and STONE, JJ.[*]

## OPINION

FORSBERG, Judge.

This appeal is from an order of the district court affirming an order of the Minneapolis Civil Service Commission sitting as a veteran's preference hearing panel, and vacating a previous judgment granting appellant salary pending discharge pursuant to the Veteran's Preference Act, Minn.Stat. § 197.46 (1986). We affirm.

## FACTS

Errol Lewis is a veteran employed by the Minneapolis School District since 1971. Although initially hired as a truck driver, he

[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

transferred to the Board of Education on March 23, 1972. Lewis worked as a mechanic until January 15, 1981, when he was promoted to foreman of the equipment shop. In 1975, Lewis began a second job as a contract truck driver for United Dressed Beef Company (UDB). Lewis' supervisor at the Board was aware of his second job, and the Board did not have a rule prohibiting moonlighting.

In May of 1985, appellant's job as foreman was eliminated as a result of a management reorganization. Appellant was compelled to take a voluntary demotion to mechanic, his former position. Lewis then began experiencing migraine headaches and consulted his physician, Dr. Townes, who diagnosed his condition as hypertension, job stress, high blood pressure, and obesity and recommended that Lewis take some time off work and lose some weight. Lewis did not inform Dr. Townes of his job with UDB.

In a letter dated May 10, 1985, sent to Lewis' employer, Dr. Townes described his medical diagnosis and recommended that Lewis take off work for at least 60 days to relieve the job stress. A similar letter was mailed to the employer after a follow-up appointment on August 5th.

Although he was collecting sick leave pay from the Board, Lewis continued driving truck for UDB. He received a total of $10,739.00 in sick leave from the Board from May 17, 1985, to September 6, 1985. On September 9, 1985, however, the Board sent Lewis a letter informing him that it would not continue paying him sick leave, and directing him to contact the Board. On November 6, 1985, the Board sent Lewis a notice of intent to discharge, claiming that he had abused its sick leave policy and appropriated public funds, and advising him of his veteran's rights under Minn. Stat. § 197.46 (1986). Lewis sought a veteran's hearing and the matter was scheduled to be heard before an Administrative Law Judge (ALJ). On February 28, 1986, Lewis sent the Board a report from his doctor that certified that he was able to

return to work, and the Board recommended paying Lewis his salary.

During the pendency of this matter, Lewis moved the Hennepin County District Court for a writ of mandamus compelling the Board to continue paying him his sick leave pay until the hearing on his discharge, pursuant to Minn.Stat. § 197.46. The court granted the writ.

The ALJ concluded that the Board had not proven just cause to discharge Lewis, and that Lewis' veteran's rights had been violated, stating that he had been suspended without pay. The ALJ recommended that the Civil Service Commission reinstate Lewis to his position and award him back pay and benefits.

Although the Commission adopted all of the ALJ's findings of fact, it did not follow her recommendation. Instead, the Commission found that the Board had not violated Lewis' veteran's rights, concluding that Lewis had not been suspended without pay pending discharge proceedings. Further, the Commission found that the Board had proven its charges of abuse of sick leave and appropriation of public funds by a preponderance of the evidence, and that just cause existed to suspend Lewis.

The Commission then suspended Lewis without pay for 90 days. The Commission stated that Lewis could apply for payment of any accrued sick leave remaining as of September 6, 1986, but concluded that the Board could deduct from the amount of sick leave paid to Lewis the sum Lewis earned in his second job for the period during which sick leave was paid.

Lewis appealed the Commission's decision to Hennepin County District Court. The court affirmed the decision and further ordered that its earlier judgment granting Lewis back pay be vacated.

## ISSUES

1. Is the decision of the Minneapolis Civil Service Commission which adopted all of the findings made by the Administrative Law Judge, but reached a different conclu-

sion, arbitrary or capricious, or without substantial evidence in the record?

2. Is a veteran on sick leave who receives a notice of intent to discharge entitled to receive payments for both salary and sick leave pay throughout the pendency of the discharge proceeding?

3. Did the Commission err in permitting respondent to offset the benefits owed to appellant by the sum appellant earned at his second job while on sick leave?

## ANALYSIS

### I. Suspension

The Board stopped paying Lewis his sick leave pay upon learning that Lewis was still driving truck for UDB. The Board alleged that Lewis was fraudulently collecting sick pay, claiming that Lewis' actions in continuing employment with UDB precluded a finding that he was "sick" under its sick leave policy. Rules 15.17 and 15.18 of the Minneapolis Civil Service Commission sick leave plan govern sick leave. They provide:

Rule 15.17 *Sick Leave*

[E]mployees in the classified service of the City of Minneapolis shall be entitled to leave with full pay for actual illness, temporary physical disability, or illness in the immediate family or quarantine in accordance with the rules, laws and regulations as hereinafter provided.

Rule 15.18 *Definition of Sick Leave*

The word "illness" as it occurs in this rule shall be understood to include bodily disease or injury or mental affliction, whether or not a precise diagnosis is possible, when such disease or affliction *is, in fact, disabling,* * * * provided such time away from work is recommended by the employee's physician.

The Commission determined that just cause existed to suspend Lewis, stating:

The School District has proven by a preponderance of the evidence that Lewis knowingly and intentionally submitted false claims for paid sick leave when he

was not in fact actually ill or temporarily disabled as defined in Civil Service Commission Rules 15.17 and 15.18, constituting a violation of Rule 12.02(i) of the Minneapolis Civil Service Commission Rules.

Appellant contends that the Commission's decision to suspend him, and its conclusion that he knowingly and intentionally submitted false claims for sick leave, are not supported by the record and are inconsistent with the Commission's findings of fact.

The Commission adopted all of the ALJ's findings of fact. Relevant findings included that the Board was aware of Lewis' job with UDB, and that it had no rule prohibiting an employee from holding a second job. No evidence existed to show that Lewis purposefully concealed his secondary employment from Dr. Townes, and Lewis had a reputation of being an honest and dependable employee who did not call in sick frequently, as evidenced by his accumulation of over 1,000 hours of sick leave. During his 14 years of employment with the Minneapolis Board of Education, Lewis had never been suspended, received a written reprimand, nor accused of dishonesty. Further, Lewis was unaware of any conflict between collecting sick leave for the purpose of relieving job stress in his primary employment with the Board and continuing his second job at UDB while on sick leave.

Appellant claims that in order to reach its decision, the Commission had to make a finding of intent; thus, appellant argues that the Commission's decision was arbitrary and capricious. Further, appellant argues that the mere fact that he was able to drive truck for UDB does not conclusively prove that he was capable of carrying out his duties as mechanic for the Board and, hence, that his illness was not disabling as required by the rules. Appellant points out that the Board's own witness, Dr. Townes, testified that Lewis was actually ill. Therefore, appellant argues that the Commission's decision was without substantial evidence to support it.

On appeal we will affirm the Commission's decision if it is supported by substantial evidence. *State ex rel. Jenson v. Civil Service Commission of City of Minneapolis,* 268 Minn. 536, 538–39, 130 N.W.2d 143, 146 (1964), *cert. denied,* 380 U.S. 943, 85 S.Ct. 1023, 13 L.Ed.2d 962 (1965); *Johnson v. Village of Cohasset,* 263 Minn. 425, 431, 116 N.W.2d 692, 697 (1962). The Minnesota Supreme Court has stated that substantial evidence is:

1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2) more than a scintilla of evidence; 3) more than "some evidence"; 4) more than "any evidence"; and 5) evidence considered in its entirety. There are correlative rules or principles that must be recognized by a reviewing court, such as: 1) unless manifestly unjust, inferences must be accepted even though it may appear that contrary inferences would be better supported; 2) substantial judicial deference to the fact-finding processes of the administrative agency; and 3) the burden is upon the appellant to establish that the findings of the agency are not supported by the evidence in the record, considered in its entirety.

*Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 (Minn.1977). Thus, the appellate court is not to substitute its own judgment for that of the Commission, but to determine whether the Commission abused its discretion.

■ We must affirm the Commission's decision. Under our standard of review, we cannot say that the inference that appellant was not disabled, since he was capable of driving long hauls for UDB, is manifestly unjust.

## II. Back Pay

Lewis claims that despite the fact that he was on sick leave when the Board served him with a notice of intent to discharge, the VPA mandates that the Board pay him his salary in addition to his sick leave benefits, pending the discharge hearing. The Board contends that it owes nothing to Lewis for the period in which Lewis was on sick leave, reasoning that (1) Lewis *removed himself* from his employment by going on a medical leave of absence, and (2) the statute does not govern payment of sick leave, only salary.

Section 197.46 provides:

* * * No [publicly employed veteran] * * separated from the military service under honorable conditions, shall be removed from such position or employment except for incompetency or misconduct shown after a hearing, upon due notice, upon stated charges, in writing.

Minn.Stat. § 197.46 (Minn.1986).

The Minnesota Supreme Court has stated that under this provision an honorably discharged veteran in public employment retains his position until he has been discharged in accordance with the statute. *Johnson,* 263 Minn. at 436, 116 N.W.2d at 700. Any suspension must be with pay, unless it is a disciplinary suspension unrelated to the discharge proceeding. *Kurtz v. City of Apple Valley,* 290 N.W.2d 171, 173 (Minn.1980).

In *Mitlying v. Wolff,* 342 N.W.2d 120 (Minn.1984), the Minnesota Supreme Court stated:

The Veteran's Preference Act is just what its title indicates: a law giving preference to veterans. It says a veteran cannot be removed—*i.e.,* discharged—from his or her public employment except for incompetency or misconduct "after a hearing." The hearing must come first, then the discharge. Until discharge, the veteran is entitled to be paid. When a suspension without pay accompanies a pending discharge proceeding, the practical effect is to accelerate the discharge. To suspend without pay before the hearing would accomplish the same thing as a discharge without a hearing, *i.e.,* "removal" of the employee from the job with no pay.

*Id.* at 123.

The Commission reasoned that once Lewis had taken sick leave he had removed

himself from active duty and, thus, was not entitled to receive salary from the Board, only payment of accrued sick leave, until he was able to come back to work on February 28, 1986.

■ We agree; there is no basis to permit Lewis to receive both his salary and payment for sick leave. The statute provides that pending discharge the employee is entitled to retain his position, not improve it. Lewis could not have remained in his position with the Board and collected both his salary and sick leave pay. The purpose of the VPA is to provide security in public employment, not to permit a double recovery. *See Johnson*, 263 Minn. at 436–37, 116 N.W.2d at 700. Thus, we hold that the Commission properly determined that Lewis was entitled only to payment of accrued sick leave pay until February 28, 1986. On that date, when his doctor certified that he was able to return to work, Lewis became entitled to payment of his salary, and his right to payment of accrued sick leave pay expired.

### III. Offset

■ Appellant challenges the Commission's authority to permit the Board to offset the amount owed to Lewis as sick leave by the amount earned by Lewis in his job with UDB. We find no error in this decision. A veteran's entitlement to compensation for the period of removal pending the discharge hearing is subject to customary mitigation of damages principles. *Id.* Since the Commission determined that Lewis had abused his sick leave, an offset was proper. *See Robertson v. Special School District No. 1*, 347 N.W.2d 265 (Minn.1984) (permitting employer to offset salary owed to employee by the sum paid out to the employee as unemployment compensation during the period for which he was suspended without pay); *Kurtz*, 290 N.W.2d at 174 (case remanded to determine amount of unemployment compensation paid to veteran).

### DECISION

The trial court did not err in affirming the decision of the Civil Service Commission suspending appellant and ordering an offset of benefits owed appellant and vacating its judgment granting appellant back pay of salary and benefits.

Affirmed.