Steven J. BRULA, petitioner, Relator,

v.

ST. LOUIS COUNTY, Respondent,

Commissioner of Veterans Affairs, Respondent.

No. C5-98-997.

Court of Appeals of Minnesota.

Jan. 19, 1999.

---

**860**

Patrick J. Kelly, Stephen C. Kelly, Bannigan & Kelly, P.A.,St. Paul, for relator.

Alan L. Mitchell, St. Louis County Attorney, Timothy O. Lee, Assistant County Attorney, Duluth, for respondent St. Louis County.

Michael A. Hatch, Attorney General, St. Paul, for respondent commissioner.

Considered and decided by PETERSON, Presiding Judge, SCHUMACHER, Judge, and HARTEN, Judge.

## OPINION

HARTEN, Judge

Relator, Steven J. Brula, filed a petition with the Commissioner of Veterans Affairs claiming that he was forced to resign employment and that his employer, respondent St. Louis County (County), failed to notify him of his right to notice and a hearing under the Veterans Preference Act (VPA), Minn.Stat. § 197.46 (1996). The Administrative Law Judge (ALJ) found that relator's resignation was caused by Post–Traumatic Stress Disorder (PTSD) attributable to his participation in the Vietnam War, but because County had no role in relator's decision to resign or his disorder, it was not required to notify him of VPA rights. The Commissioner adopted the ALJ's findings and relator petitioned this court for a writ of certiorari. Because we conclude that a veteran whose involuntary resignation is without good cause attributable to the employer is not entitled to notice and a hearing under the VPA, we affirm.

## FACTS

Relator joined the United States Army in 1969, served on active duty in Vietnam, and was honorably discharged in 1971. He was involved in combat and wounded in the left knee and foot; as a result, the U.S. Veterans Administration (VA) granted him a 10% disability.

In 1981, relator began work with County's highway department. In 1987, County promoted him to senior equipment operator. In 1995, after relator displayed various symptoms, both his psychologist and the VA diagnosed relator with PTSD, and the VA granted relator a 50% disability rating due to this condition.

On August 5, 1996, relator's physician determined that, because of the condition of his knee and foot, relator should not operate a grader until August 12. Relator did not report to work from August 5 to August 9 and he later testified that he was suffering from PTSD during that time. On August 9, 1996, relator faxed the following letter to his supervisor:

> To whom may concern: on this day 8–9–96 I Steven J. Brula will resign or retire in accordance w/1995 contract to receive PERA in lump sum from St. Louis Co. Div 6 VA, MN by 8–12–96. Let this be known as public record 8–9–96.

County's Civil Service Director accepted relator's resignation on August 22, 1996.

Because relator resigned, County did not notify relator of his VPA rights. Approximately two years later, relator filed a VPA

petition with the Department of Veterans Affairs. Relator now seeks certiorari review of an adverse decision of the Commissioner of Veterans Affairs.

## ISSUE

Are notice and a hearing required under the VPA when a veteran's involuntary resignation is without good cause attributable to the employer?

## ANALYSIS

■ A contested case is "a proceeding before an agency in which the legal rights, duties, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing." Minn. Stat. § 14.02, subd. 3 (1996). On judicial review of a contested agency proceeding, we may affirm, remand, reverse, or modify the findings of the agency if the substantial rights of relator were prejudiced by an error of law. See Minn.Stat. § 14.69 (1996). In considering questions of law, "reviewing courts are not bound by the decision of the agency and need not defer to agency expertise." *St. Otto's Home v. Department of Human Servs.*, 437 N.W.2d 35, 39–40 (Minn. 1989). This is especially true for matters of statutory interpretation. *Johnson v. County of Anoka*, 536 N.W.2d 336, 338 (Minn.App. 1995), *review denied* (Minn. Sept. 28, 1995).

■ Under the VPA, a county or other political subdivision may not remove a U.S. armed services veteran from employment except for incompetence or misconduct "shown after a hearing, upon due notice, upon stated charges, in writing." Minn.Stat. § 197.46 (1996). Relator acknowledges that he resigned, but argues that he was entitled to notice and a hearing under the VPA because, although the VPA does not mention resigna-

tion, relator's resignation was due to PTSD and was therefore involuntary, and the VPA applies to involuntary resignations.

Minnesota cases hold that when a veteran's involuntary resignation is with good cause attributable to the employer, the employer must give notice and a hearing under the VPA. *See, e.g., Johnson,* 536 N.W.2d at 339 (" 'resign or be terminated' choice constituted a removal"); *Myers v. City of Oakdale,* 409 N.W.2d 848, 850–51 (Minn.1987) ("[A] veteran is removed from his or her position or employment when the effect of the employer's action is to make it unlikely or improbable that the veteran will be able to return to do the job") *quoted in Johnson,* 536 N.W.2d at 339. But there is no precedent under the VPA concerning resignation that is not for good cause attributable to the employer.[1]

Reemployment insurance cases concerning whether resignation disqualifies an employee from reemployment benefits are analogous. *See, e.g., Shanahan v. District Mem'l Hosp.,* 495 N.W.2d 894 (Minn.App.1993) and *Seacrist v. City of Cottage Grove,* 344 N.W.2d 889 (Minn.App.1984). *Shanahan* addressed whether an employee's resignation would disqualify him from reemployment benefits and held that if an employee "voluntarily and without good cause attributable to the employer discontinued employment with such employer" the employee would be ineligible. *Shanahan,* 495 N.W.2d at 896–97, (quoting Minn.Stat. § 268.09, subd. 1(a), (1990)).[2] *Seacrist* held that an employee who quit rather than exercise the right to have a determination of alleged misconduct was not entitled to benefits, noting that "[w]hen an employee says he is quitting, an employer has a right to rely on the employee's word." *Seacrist,* 344 N.W.2d at 891–92.

---

1. The ALJ relied on an unpublished case entitled *Chase v. Independent School Dist. No. 31,* No. C9–93–899, 1993 WL 459883, at *3 (Minn.App. Nov.9, 1993), *review denied* (Minn. Dec. 22, 1993), holding that a veteran who voluntarily resigned without good cause attributable to the employer was not entitled to notice and hearing under the VPA. While we do not disagree with the ALJ's reading of *Chase,* an unpublished case is not precedential. Minn.Stat. § 480A.08, subd. 3(c) (1996).

2. The statute was subsequently amended to reflect *Shanahan. See* Minn.Stat. § 268.09, subd. 1a(1) (Supp.1997): "a claimant who quits employment shall be disqualified from benefits * * * unless the claimant quit the employment because of a good reason caused by the employer."

Relator argues that because Minnesota has never examined whether resignations caused by PTSD are voluntary, we should apply federal caselaw on resignations of the mentally ill.[3] *See, e.g., Scharf v. Department of the Air Force,* 710 F.2d 1572, 1574 (Fed.Cir. 1983) (holding that a court must examine the circumstances surrounding a resignation "to test the ability of the employee to exercise free choice" and that a resignation cannot be voluntary when "an employee fails to understand the situation due to mental incompetence"). But federal law does not deal with Minnesota statutes and is not binding on Minnesota courts. *See State v. Thompson,* 273 Minn. 1, 29, 139 N.W.2d 490, 511 (1966).

Relator further argues that in addition to federal caselaw, the policy behind the .VPA supports his position. The legislature intended that veterans enjoy security in public employment and protection from the political spoils system. *AFSCME Council 96 v. Arrowhead Reg'l Corrections Bd.,* 356 N.W.2d 295, 298 (Minn.1984). The legislature also recognized that "training and experience in the military services of the government and loyalty and sacrifice for the government are qualifications of merit * * *." Minn.Stat. § 43A.11, subd. 1 (1996). But, while the legislature recognized that veterans should be protected in public employment, there is no showing that the legislature intended to protect veterans from themselves.

 Moreover, even if we were persuaded by relator's arguments that federal caselaw and public policy support extending the application of VPA benefits, "the task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." *Tereault v. Palmer,* 413 N.W.2d 283, 286 (Minn.App.1987), *review denied* (Minn. Dec. 18, 1987). The plain language of the VPA does not provide for notice and hearing following an employee's resignation. Minn.Stat. § 197.46. Minnesota caselaw does not support providing VPA notice and hearing to veterans who resign without good cause attributable to the employer. *See, e.g.,*

*Shanahan,* 495 N.W.2d at 896–97; *Seacrist,* 344 N.W.2d at 891–92. We therefore conclude that a veteran who resigns, voluntarily or involuntarily, without good cause attributable to the employer is not entitled to notice and hearing under the VPA.

## DECISION

The ALJ properly decided that relator was not entitled to notice and a hearing under the VPA because relator's resignation was not for good cause attributable to his employer.

**Affirmed.**

SCHUMACHER, Judge (dissenting)

I respectfully dissent. The majority is correct in stating that *Shanahan v. District Mem'l Hosp.,* 495 N.W.2d 894 (Minn.App. 1993), and *Seacrist v. City of Cottage Grove,* 344 N.W.2d 889 (Minn.App.1984), set out the test for determining whether a resignation is voluntary under Minnesota law. I believe, however, that the lack of Minnesota precedent and the strength of federal precedent, as well as the policy of the Veterans Preference Act, require us to make an exception where a resignation is not of the veteran's free will due to mental incompetence or post-traumatic stress disorder.

First, *Shanahan* and *Seacrist* state the general rule for resignations, but they interpret Minn.Stat. § 268.09, not the Veterans Preference Act. 495 N.W.2d at 896, 344 N.W.2d at 891. While section 268.09 does deal with resignations, it does not provide guidance for resignations that result from post-traumatic stress disorder. Minn. Stat § 268.09 (1998). We need not follow their precedent.

Second, while the majority correctly states that we are not bound by federal decisions, federal decisions are persuasive. *Sonenstahl v. L.E.L.S., Inc.,* 372 N.W.2d 1, 4 (Minn.App. 1985). *Shanahan* and *Seacrist,* while also persuasive, are not appropriate precedent here. Indeed, *Scharf v. Department of the Air Force,* 710 F.2d 1572 (Fed.Cir.1983), and its predecessor, *Manzi v. United States,* 198

---

**3.** The record does not clinically categorize PTSD as a mental illness. It does not reveal whether the impairment rendered relator incompetent to handle his affairs. The evidence simply indicated that PTSD affected relator, caused his resignation, and warranted a 50% disability rating.

Ct.Cl. 489 (1972), are more directly on point and deal specifically with employees who were suffering from and resigned due to mental incompetence. *See Shrader v. United States*, 38 Fed Cl. 788, 798 (1997) ("voluntariness is vitiated when * * * an employee fails to understand the situation due to mental incompetence") (quoting *Scharf*, 710 F.2d at 1574 (citing *Manzi*, 198 Ct.Cl. at 492)).

Third, while the Veterans Preference Act does not discuss resignations, the policy behind the Act supports extending its notice and hearing requirements to a veteran who resigns due to mental incompetence or post-traumatic stress disorder. As the majority points out, the legislature intended that veterans enjoy security in their public employment. *AFSCME Council 96 v. Arrowhead Reg'l Corrections Bd.*, 356 N.W.2d 295, 298 (Minn.1984). Furthermore, the Veterans Preference Act protects against the arbitrary abuse of authority. *Garavalia v. City of Stillwater*, 283 Minn. 335, 346, 168 N.W.2d 336, 344 (1969). We should interpret the Veterans Preference Act to ensure that veterans receive notice and a hearing when a resignation is involuntary as a result of post-traumatic stress disorder, a condition which often afflicts veterans as a result of combat service.

The ALJ determined that post-traumatic stress disorder directly caused relator's resignation. He did not determine whether it was voluntary or involuntary. Accordingly, I would reverse and remand for a hearing to determine the voluntariness of relator's resignation.